Charles A. JOHNSON and Lucille Johnson, h/w

v.

SUMMA CORPORATION d/b/a Desert Inn and Country Club and International Foundation of Employee Benefit Plans, Inc.

Civ. A. No. 84-2844.

United States District Court, E.D. Pennsylvania.

Oct. 3, 1985.

William Hildenbrand, Arthur L. Pressman, Philadelphia, Pa., for plaintiff.

Charles W. Craven, Francis E. Marshall, Philadelphia, Pa., for Summa Corp. d/b/a Desert Inn.

## MEMORANDUM AND ORDER

DITTER, District Judge.

While attending an instructional program conducted by defendant International Foundation of Employee Benefit Plans (I.F. E.B.P.) and held at a hotel owned by Summa Corp. d/b/a Desert Inn and Country Club (Desert Inn), plaintiff Charles John-

son allegedly fell on a sidewalk abutting the Desert Inn and injured his right hip. This action followed. Presently before me is the Desert Inn's motion to dismiss for lack of personal jurisdiction. For reasons that follow, this motion will be granted.

It is clear that once a jurisdictional defense has been properly raised, the plaintiff has the burden of demonstrating contacts with the forum state sufficient to give the court *in personam* jurisdiction. *Compagnie de Bauxites de Guinee v. L'Union*, 723 F.2d 357 (3d Cir.1983).

Rule 4(e) of the Federal Rules of Civil Procedure permits personal jurisdiction over a nonresident to the extent allowed under the law of the state in which the district court is held. The Pennsylvania long-arm jurisdiction provisions, 42 Pa. Cons.Stat.Ann. §§ 5301, 5322 (Purdon 1981) create a two-tiered approach for determining whether an out-of-state defendant may be subjected to the jurisdiction of a Pennsylvania tribunal. First, a Pennsylvania court may exercise jurisdiction over a corporation if the cause of action arose from the corporation's "transacting business" within the forum.[1] *Id.* § 5322(a)(1). Second, jurisdiction is proper if the corporation has been carrying on a systematic part of its general business within the Commonwealth. *Id.* § 5301(a)(2)(iii). The statute further provides that jurisdiction extends beyond the enumerated grounds to "the fullest extent allowed under the Constitution of the United States...." *Id.* § 5322(b). *See Controlled Metal, Inc. v. Non-Ferrous International Corp.*, 410 F.Supp. 339 (E.D.Pa.1976); *Hart v. McCollum*, 249 Pa.Super. 267, 376 A.2d 644 (1979).

The Pennsylvania statutory scheme mirrors the approach mandated by the due process clause of the United States Consti-

tution. Where the defendant's forum activities give rise to the plaintiff's claim for relief, the plaintiff need only show that defendant had "minimum contacts" with the forum. *See International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). However, in situations where the plaintiff is pressing a non-forum related injury, in order to satisfy due process he must demonstrate that the defendant maintained "continuous and substantial" forum contacts. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *International Shoe*, 66 S.Ct. at 154; *Gehling v. St. George's School of Medicine, Ltd.*, 773 F.2d 539, 541 (3d Cir. 1985); *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984).

Initially, therefore, I must determine whether the defendant's forum activities gave rise to the cause of action being asserted by the plaintiffs. Plaintiffs contend that the direct Pennsylvania contacts of Desert Inn, a Delaware corporation with its principal place of business in Nevada, consist of its maintenance of a toll-free number in the Philadelphia Yellow Pages, Mr. Johnson's receipt on February 28, 1985, of promotional material from Desert Inn, and the presence on March 27, 1984, of Desert Inn promotional advertising in a Philadelphia travel agency. Plaintiffs also rely on the Pennsylvania contacts of I.F.E.B.P., contending that I.F.E.B.P. acted as an "ostensible" or apparent agent of Desert Inn, and therefore I.F.E.B.P.'s contacts should be imputed to Desert Inn.

Plaintiffs' action does not arise from the Desert Inn's direct contacts with Pennsylvania. In determining whether the cause of action "arose from" a defendant's activities in the forum state, a court cannot

---

**1.** "Transacting business" for purposes of section 5322 includes the following:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) the doing of a single act in this Commonwealth for the purpose of thereby realizing

pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

42 Pa.Cons.Stat.Ann. § 5322(a)(1) (Purdon 1981).

consider those contacts taking place after the date on which the alleged cause of action arose. Thus, this action, stemming from an alleged April, 1983, injury, could not have arisen from either the February, 1985 solicitation of Mr. Johnson or the March, 1984 presence of advertising material in Philadelphia. Similarly, I cannot conclude that the cause of action arose from Desert Inn's maintenance of a toll-free number because Mr. Johnson has not stated that he knew of the toll-free number or utilized it in any way in connection with his visit to the Desert Inn. *See Busch v. Sea World,* 95 F.R.D. 336, 340 (W.D.Pa. 1982). In fact, Mr. Johnson's affidavit provides that "[a]s a result of reading the materials contained in Exhibit 'B', I decided to attend the Institute at the Desert Inn and Country Club in Las Vegas, Nevada." Affidavit of Charles Johnson ¶ 4. Plaintiffs have failed to show that the materials contained in Exhibit "B", copies of a mailing sent to Mr. Johnson apparently by I.F. E.B.P., were prepared or adopted in any way by Desert Inn.[2] Thus, Mr. Johnson's own affidavit undermines any theory that the cause of action arose from any Desert Inn promotional activity in Pennsylvania.

Plaintiffs' argument that the action arose from the contacts of I.F.E.B.P. and should be imputed to Desert Inn also fails to withstand scrutiny. Assuming that the contacts of an agent or apparent agent can be imputed to the principal, *but c.f. Nissley v. J.L.G. Indus., Inc.,* 306 Pa.Super. 557, 452 A.2d 865, 868 (1982), plaintiffs have failed to demonstrate either an actual or apparent agency relationship.

In order to establish an agency, plaintiff would have to demonstrate the following: " 'the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking.' " *Scott v. Purcell,* 490 Pa. 109, 117,

415 A.2d 56 (1980) (quoting Restatement (Second) of Agency § 1(1) comment b (1958)). *See also Goodway Marketing v. Faulkner Advertising Assocs.,* 545 F.Supp. 263, 266–67 (E.D.Pa.1982).

█ Plaintiffs contend that an actual agency arose from an agreement between I.F.E.B.P., which organizes instructional labor-management seminars, and Desert Inn, whereby Desert Inn agreed to provide its facility to I.F.E.B.P. for the seminar which Mr. Johnson attended. While reservations for the seminar were to be placed through I.F.E.B.P., the agreement is silent as to how I.F.E.B.P. was to go about soliciting attendees. The most obvious shortcoming in plaintiffs' theory is a total lack of control on the part of Desert Inn to direct I.F.E.B. P.'s solicitation for the seminar. As the element of control is the touchstone of a principal-agent relationship, I cannot find that an actual agency relationship was created. *See, e.g., Kelly v. U.S. Steel Corp.,* 170 F.Supp. 649 (W.D.Pa.1959).

Plaintiffs also contend that there was an apparent or "ostensible" agency relationship between I.F.E.B.P. and the Desert Inn. The test for determining whether "an agent possesses apparent authority is whether 'a man of ordinary prudence, diligence and discretion would have a right to believe that the agent possessed the authority he purported to exercise.' " *Universal Computer Systems, Inc. v. Medical Servs. Ass'n,* 628 F.2d 820, 823 (3d Cir. 1980) (quoting *Apex Fin. Corp. v. Decker,* 245 Pa.Super. 439, 369 A.2d 483, 485–86 (1976)).

█ In determining whether the reasonable man would have the right to believe in the existence of an agency relationship, the proper focus is on the conduct of the alleged principal and not the agent. *William B. Tanner Co. v. WIOO, Inc.,* 528 F.2d 262, 266 (3d Cir.1975); *Revere Press,*

---

**2.** In connection with another motion filed in this case, Mr. Johnson contended that I.F.E.B.P., at some unknown time, sent him a Desert Inn brochure. *See* Exhibit "B" to plaintiffs' amended civil complaint. Because this brochure has

not been linked to the mailing that Mr. Johnson stated induced him to attend the institute, I cannot consider whether the cause of action arose from this contact.

*Inc. v. Blumberg,* 431 Pa. 370, 246 A.2d 407, 410 (1968). Plaintiffs have failed to offer any evidence of action or inaction on the part of Desert Inn which would allow someone to infer the existence of an agency. I thus cannot conclude that a reasonable person could believe that I.F.E.B.P. acted as an agent for Desert Inn.

Because the record shows that the cause of action could not have arisen from either the direct or indirect Pennsylvania contacts of Desert Inn, plaintiffs must show that the Desert Inn has had continuous and substantial contact with this forum. *Helicopteros Nacionales de Colombia S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61 (3d Cir.1984).

■ The contacts consist of the maintenance of a toll-free number, the mailing of a brochure to plaintiff, and the presence of promotional materials at a Philadelphia travel agency. Extensive advertising efforts in combination with the maintenance of a toll-free number can rise to a continuous and substantial level. *Garfield v. Homowack Lodge, Inc.,* 249 Pa.Super. 392, 378 A.2d 351 (1977). In *Homowack Lodge,* the defendant, a New York resort lodge, had advertised for five years in a weekly Philadelphia newspaper, at an annual cost of $2,000. It also maintained a toll-free number for Philadelphia-area residents to make reservations. Finally, the lodge provided brochures to Philadelphia travel agents and paid those agents a ten percent fee for customers they referred. *Id.* at 353. The Superior Court held these activities to be continuous and substantial within the meaning of *International Shoe,* and affirmed the trial court's exercise of *in personam* jurisdiction.

■ In order for a defendant's forum activities to be considered continuous and substantial, however, they must be "extensive and pervasive." *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas,* 675 F.2d 587, 589 (3d Cir.1982). *See also Gehling v. St. George's School of Medicine, Ltd.,* 773 F.2d 539, 541–44 (3d Cir.1985). The maintenance of a toll-free number, the presence of brochures in one travel agency with no information about commissions or referrals, and a single mailing can hardly be considered "extensive and pervasive." Plaintiffs want me to infer from Mr. Johnson's post-visit receipt of Desert Inn promotional material a general practice on the part of that defendant to solicit past visitors, many of whom presumably reside in this forum. While this may indeed be the case, I must base a decision as to the permissibility of exercising personal jurisdiction on evidence placed in the record and may not simply speculate. *See Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 66–67 n. 9 (3d Cir.1984); *Simkins Corp. v. Gourmet Resources Int'l, Inc.,* 601 F.Supp. 1336, 1339 (E.D.Pa.1985). The parties have been given a more than generous period of time in which to pursue discovery and I am unwilling to again open discovery on the existence of such a general practice and withhold decision on the motion.